# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

PEOPLE'S UNITED BANK,
    *Plaintiff*,
v.

MICHAEL C. CULVER,
    *Defendant*.

No. 3:17-cv-723 (VAB)

## RULING AND ORDER ON PLAINTIFF'S MOTION TO DISMISS

People's United Bank sued Michael Culver for two breaches of a loan agreement for Skip Barber Racing School LLC ("Racing School"), a company for which Mr. Culver was the majority owner. Complaint, ECF No. 1 ("Compl."), at 2–3.

Mr. Culver has responded by, *inter alia*, filing a counterclaim for tortious interference with contracts and asserting several affirmative defenses, including an unclean hands defense. Defendant's Amended Answer to Plaintiff's Complaint, ECF No. 25, at 5–7.

People's United Bank moved to dismiss Mr. Culver's counterclaim for lack of subject-matter jurisdiction and to strike his unclean hands defense. Motion to Dismiss, ECF No. 27.

For the following reasons, the Court **GRANTS** People's United Bank's motion to dismiss and **GRANTS** People's United Bank's motion to strike.

The Court dismisses Mr. Culver's counterclaim for tortious interference with contract and dismisses the affirmative defense of unclean hands from the Amended Answer.

Because Mr. Culver is proceeding *pro se*, the Court will not require him to file the Amended Answer again, but this case will proceed without this defense or any allegations relating to it being viable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

On January 25, 2011, People's United Bank agreed to loan the Racing School up to $1,000,000. Compl. at ¶ 8. People's United Bank alleges that Mr. Culver, as the majority owner of the racing school, guaranteed the loan obligations. *Id.* at ¶ 9.

People's United Bank also alleges that the loan is currently in default and the obligations "have been accelerated and demanded of both the Racing School and Culver." *Id.* at ¶ 10. As the holder of the loan note, People's United Bank sought to hold Mr. Culver responsible for the loan obligations, but People's United Bank alleges that "Culver has refused and failed to pay the indebtedness owed pursuant to the 2011 Note, or otherwise duly perform the Obligations under the 2011 Loan Agreement and the Culver 2011 Guaranty." *Id.* at ¶¶ 11, 12.

People's United Bank alleges the principal amount on the loan is $992,235.72, interest accrued as of February 28, 2017 is $38,342.01, and late charges are $1,387.06. *Id.* at ¶ 13.

On September 12, 2013, People's United Bank agreed to make available to the Racing School a second loan of $200,000. *Id.* at ¶ 18. People's United Bank alleges that Mr. Culver has guaranteed the loan obligations for this loan. *Id.* at ¶ 20.

On May 22, 2015, the parties amended the loan agreement. *Id.* at ¶ 19.

People's United Bank alleges that the 2013 loan agreement "is in default and Obligations have been accelerated and demanded of both the Racing School and Culver." *Id.* at ¶ 21. Nevertheless, Mr. Culver allegedly "has refused and failed to pay the indebtedness owed pursuant to the 2013 Note, or otherwise duly perform the Obligations under the 2013 Loan Agreement and the Culver 2013 Guaranty." *Id.* at ¶ 23.

People's United Bank alleges that the principal amount on the second loan is $200,000,

interest accrued as of February 28, 2017 is $6,844.44, and late charges are $10,297.22.

### B. Procedural History

On May 2, 2017, People's United Bank filed its Complaint against Mr. Culver. Compl.

On September 11, 2017, the parties jointly filed an *ex parte* motion for a stay of the proceedings, which the Court granted. Joint Ex Parte Motion for Stay and Extension of Time for Further Proceedings, ECF No. 9; Order, ECF No. 10.

Following a status report, the Court again stayed the proceedings. Status Report, ECF No. 11; Order Staying Case, ECF No. 12.

On September 10, 2018, People's United Bank moved for default entry, which the Clerk of the Court granted. Motion for Default Entry, ECF No. 14; Order, ECF No. 15.

On October 3, 2018, Mr. Culver objected to the motion for default entry. Objection, ECF No. 17.

On October 9, 2018, People's United Bank moved for default judgment, which the Court denied. Motion for Default Judgment, ECF No. 16; Order, ECF No. 18.

On October 10, 2018, the Court issued a scheduling order directing Mr. Culver to file an answer regarding the default judgment. Scheduling Order, ECF No. 19.

On October 15, 2018, Mr. Culver filed an Answer. Answer to Complaint with Affirmative Defenses, ECF No. 22.

On November 8, 2018, Mr. Culver filed an Amended Answer. Amended Answer to Complaint with Affirmative Defenses, ECF No. 25.

He asserted four affirmative defenses: (1) "The Complaint fails to state a claim upon which relief may be granted;" (2) "The personal guarantees, Culver 2011 Guaranty and Culver 2013 Guarantee (as defined in Plaintiff's pleadings) fail for lack of consideration;" (3) "The

Defendant reserves his right to amend this answer and to assert further affirmative defenses as they become evident through discovery, investigation and prosecution of his defense;" and (4) that People's United actions is pursuing a writ of possession and temporary restraining order in Georgia state court negatively impacted the Racing School's reputation and the value of its assets, increased the Racing School's deposit liability, severely damaged the Racing School's employee morale, hindered the Racing School and Mr. Culver's ability to generate revenue to pay the bank, and caused the Racing School to file bankruptcy. *Id.* at 5–6.

Mr. Culver also asserts a tortious interference with contracts counterclaim because "[t]he Defendant asserts that Plaintiff interfered with numerous contractual agreements between Skip Barber Racing School LLC [] and its customers who had contracted with [the Racing School] for driving school programs and had paid in advance." *Id.* at 6. Mr. Culver alleges that the unavailability of assets was a "direct and proximate result of the breach of breach of contracts with its customers," which caused substantial damage. *Id.* at 7. Mr. Culver estimates that his losses exceeded $1,000,000 because of his sixty-eight percent ownership of the Racing School. *Id.*

On January 2, 2019, People's United Bank moved to dismiss Mr. Culver's counterclaim for a lack of subject-matter jurisdiction and moved to strike Mr. Culver's fourth affirmative defense. Motion to Dismiss, ECF No. 27.

On January 3, 2019, the Court referred the case to U.S. Magistrate Judge Sarah Merriam for a settlement conference. Order Referring Case, ECF No. 28.

On January 17, 2019, plaintiff's counsel communicated to Magistrate Judge Merriam that a settlement conference would not be productive. Order, ECF No. 33.

On January 23, 2019, Mr. Culver responded to People's United's Bank motion to

4

dismiss. Objection, ECF No. 34.

On January 30, 2019, People's United Bank filed a reply to Mr. Culver's response. Reply to Response, ECF No. 36.

On February 7, 2019, Mr. Culver responded to the People's United Bank's reply. Response, ECF No. 37.

On May 16, 2019, the Court held a Rule 26(f) telephonic scheduling conference. Minute Entry, ECF No. 42.

The same day, the Court issued a scheduling order. Scheduling Order, ECF No. 43.

## II. STANDARD OF REVIEW

### A. Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction[.]" *Gunn v. Minton*, 568 U.S. 251, 256 (2013); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (explaining that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies"). If a federal court lacks subject-matter jurisdiction under Rule 12(b)(1), it must dismiss the lawsuit. *See* Fed. R. Civ. P. 12(h)(3); Fed. R. Civ. P. 12(b)(1).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the Court's subject matter jurisdiction over the claims. *Id.*

When deciding whether a case or controversy exists, the court views all uncontroverted facts as true and "draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where

jurisdictional facts are in dispute, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

B.   **Motion to Strike**

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Rule 12(f) "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted" (internal quotation marks omitted)).

Indeed, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation [that movant wishes to strike] would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial" (citing Fed. R. Civ. P. 12(f))); *Hudson's Bay Fur Sales Canada, Inc. v. Scheflin-Reich, Inc.*, No. 90-CIV-8026 (RLC), 1991 WL 60377, at *1 (S.D.N.Y. Apr. 8, 1991) ("A motion to strike matter from a complaint as immaterial will be granted only if no evidence in support of the allegation would be admissible at trial"). Furthermore, "[t]o the extent that Defendants' aim is to avoid unduly

6

inflaming and prejudicing the jury," the court may take into account that "the Complaint will not be submitted to the jury." *Schutz v. Ne. Mortg. Corp.*, No. 3:05-cv-423(MRK), 2005 WL 1868888, at *1 (D. Conn. July 27, 2005) (internal quotation marks omitted).

## III. DISCUSSION

### A. Motion to Dismiss for Subject Matter Jurisdiction

Article III, Section 2 of the United States Constitution limits federal court jurisdiction to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Spokeo*, 136 S. Ct. at 1550 (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (1998)). A party has standing when it is the proper party to bring each claim it seeks to press. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). A plaintiff is the proper party when he satisfies "the irreducible constitutional minimum of standing;" to do so, the plaintiff must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). There also "must be a causal connection between the injury and the conduct complained of," i.e., the injury must be fairly traceable to the alleged conduct. *Id.* Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

People's United Bank argues that the Court lacks subject-matter jurisdiction over the tortious interference counterclaim because "a shareholder may not proceed individually on claims based solely on injury to the corporation." People's United Bank's Motion to Dismiss, ECF No. 27 ("Mot. to Dismiss"). Without a showing by Mr. Culver that his injury was separate

7

and distinct from the Racing School's injury, People's United Bank argues that he lacks standing. *Id.* at 5–7. In People's United Bank's view, Mr. Culver's alleged injuries are inextricably linked to the Racing School's injuries: reputational and financial harms allegedly the result of People's United Bank's pursuit of a temporary restraining order and writ of possession in Georgia, which limited the Racing School's ability to generate revenue and caused a depreciation of stock value. *Id.* at 6–7.

In response, Mr. Culver argues that his tortious interference injury is distinct from the Racing School because People's United Bank is suing him for his guarantee of the loans. Defendant's Memorandum in Opposition to Plaintiff's Motion to Dismiss, ECF No. 34 ("Mem. in Opp. to Mot. to Dismiss"), at 1. Mr. Culver also argues that he has standing because he is seeking redress on behalf of himself, not other shareholders. *Id.* at 1–2. Because Mr. Culver is bringing this counterclaim as an individual, he argues that he can bring a tortious interference claim under Connecticut state law. *Id.* at 2–3.

The Court disagrees.

Under Connecticut law, "[a] claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was cause by the defendant's tortious conduct." *Rioux v. Barry*, 283 Conn. 338, 351 (2007) (citations omitted).

Moreover, "[s]tanding under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149

(2010) (citing *Horne v. Flores*, 557 U.S. 443, 445 (2009)). To meet the standing requirements, the party invoking federal jurisdiction "bears the burden of establishing these elements." *Spokeo*, 136 S.Ct. at 1547.

The injury-in-fact element requires that the plaintiff be "the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' *Spokeo,* 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). For an injury to be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Here, Mr. Culver has not established a concrete and particularized injury or show that a favorable ruling would redress his harm. As a *pro se* defendant, Mr. Culver may proceed only "with respect to his *own* claims or claims against him personally[.]" *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) (emphasis in original); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause."). Mr. Culver therefore may represent only himself in his individual capacity—not the Racing School as a limited liability company. *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("[A] limited liability company [] may appear in federal court only through a licensed attorney.").

Moreover, the Racing School may not assign its rights to Mr. Culver as a *pro se* defendant to circumvent the rule that counsel must represent an LLC. *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) ("In light of [ ] policy reasons for preventing a lay person from representing a corporation in litigation, the federal courts have, in cases governed by federal law, disapproved any circumvention of the rule by the procedural

9

device of an assignment of the corporation's claims to the lay individual."); *Lattanzio*, 481 F.3d at 140 ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms . . . a limited liability company also may appear in federal court only through a licensed attorney."). Without individual liability, an individual, even the sole member of the LLC, lacks standing to bring a claim as the LLC. *See Lundstedt v. People's United Bank*, No. 3:14-cv-01479 (JAM), 2015 WL 540988, at *2 (D. Conn. Feb. 10, 2015) (explaining that "a person who transfers his or her assets to an LLC has no standing to seek damages when those assets—now belonging solely to the LLC—are harmed" and dismissing the plaintiff's claims for lack of standing because the alleged injury was "an injury to an LLC, and not an injury to plaintiff"); *Lattanzio*, 481 F.3d at 140 ("[A] sole member of a limited liability company must bear the burdens that accompany the benefits of the corporate form and may appear in federal court only through a licensed attorney.").

Although Mr. Culver asserts that he was individually damaged in his role as the guarantor of the Racing School's loan, "[i]t is commonly understood that '[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'" *Smith v. Snyder*, 267 Conn. 456, 461 (2004) (citing *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987)); *Liberty Sackets Harbor LLC v. Village of Sackets Harbor Bachman & Kendal, LLP*, __ F. App'x __, 2019 WL 2245923, at *2 (2d Cir. May 24, 2019) ("absent a direct individual injury, a company's member lacks standing to sue for an injury to the company"). As a result, even if Mr. Culver's allegations of tortious interference are true, those allegations only demonstrate that People's United Bank harmed the Racing School, "but that no specific shareholder sustained an injury separate and distinct from that suffered by any other shareholder

or by the corporation." *Smith*, 267 Conn. at 462. But that is precisely what Mr. Culver has alleged in his counterclaim, injuries suffered by the Racing School. *See* Amended Answer to Complaint with Affirmative Defenses, ECF No. 25, at 6 ("[t]he Defendant asserts that Plaintiff interfered with numerous contractual agreements between Skip Barber Racing School LLC [] and its customers who had contracted with [the Racing School] for driving school programs and had paid in advance."); *id.* at 7 (alleging injuries that were a "direct and proximate result of the breach of breach of contracts with its customers"); *id.* (claiming that the losses exceeded $1,000,000 because of his sixty-eight percent ownership of the Racing School).

Absent an individualized injury, Mr. Culver cannot assert a claim based on the Racing School's contractual losses. *See Yanow v. Teal Indus., Inc.*, 178 Conn. 262, 282 n.9 (1979) ("where an injury sustained to a shareholder's stock is peculiar to him alone, and does not fall alike upon other stockholders, the shareholder has an individual cause of action"). Nor can Mr. Culver establish the last three elements of a tortious interference action. *See Rioux*, 283 Conn. at 351 ("A claim for intentional interference with contractual relations requires . . . (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was cause by the defendant's tortious conduct.")

Accordingly, Mr. Culver does not have a viable tortious interference with contract counterclaim.

    **B.**    **Motion to Strike**

To prevail on an unclean hands defense, a party "must show that his conduct has been fair, equitable and honest as to the particular controversy in issue" and "[u]nless the [party]'s conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." *Bauer v. Waste Mgmt. of Conn.,*

11

*Inc.*, 239 Conn. 515, 525 (1996) (citation omitted). In cases "[w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." *Thompson v. Orcutt*, 257 Conn. 301, 310 (2001) (quoting *Samasko v. Davis*, 135 Conn. 377, 383 (1949)). The unclean hands defense only applies to the particular transaction under consideration and "the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party." *Id.* at 311 (citations omitted).

People's United Bank argues that Mr. Culver's unclean hands defense is legally insufficient because the alleged unclean conduct happened to the Racing School, not Mr. Culver. Mot. to Dismiss at 8. The restraining order in question, and the related financial and reputational impact, solely apply to the Racing School. *Id.* Even if there were unclean hands due to People's United Bank's actions, the affirmative defense of unclean hands would not apply because this case involves monetary—not equitable—relief. *Id.* at 8–9. Because People's United Bank seeks monetary damages, People's United Bank argues that the unclean hands defense is legally insufficient.

In response, Mr. Culver argues that People's United Bank's conduct injured him personally, and his counterclaim is merely a response defending himself. Mem. in Opp. to Mot. to Dismiss at 3. Because People's United Bank's actions started a chain of negative economic actions that later harmed Mr. Culver, he argues that his injury is separate and distinct from the Racing School. *Id.*

In reply, the People's United Bank argues that its claims against Mr. Culver have no bearing on the legal sufficiency of his fourth affirmative defense. Plaintiff's Reply at 1.

12

The Court agrees.

Under Rule 12(f), the party moving to strike "bears a heavy burden" and must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting allegations to stand would result in prejudice to the movant." *Tucker v. Am. Int'l Grp.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013) (internal citations and quotation marks omitted).

First, no evidence in support of the unclean hands defense would be admissible because People's United Bank seeks monetary damages. An unclean hands defense is only available in cases "[w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." *See Thompson*, 257 Conn. at 310. A plaintiff must produce "admissible evidence that would allow the court to conclude that there is a factual foundation for a legally sufficient special defense," *see Aurora Loan Servs., LLC v. Decormier*, No. CV096001681, 2017 WL 6997246, at *6 (Conn. Super. Ct. Dec. 13, 2017), which requires a "showing that plaintiff's conduct was immoral and unconscionable," *see Conn. Nat'l Bank v. Peach Lake Plaza*, 612 N.Y.S.2d 494, 496 (1994).

In this case, however, People's United Bank is only seeking "[m]onetary damages against the Defendant, Michael C. Culver." *See* Compl. at 5. And a defendant cannot use an equitable defense to rebuff a claim for monetary damages. *Cadle Co. v. Ogalin*, 175 Conn. App. 1, 9 (2017) (holding that a defendant's equitable defense "is inapplicable to the plaintiff's action for monetary damages"). Any evidence Mr. Culver could fashion to support his unclean hands defense therefore would not "allow the court to conclude that there is a factual foundation for a legally sufficient special defense" of unclean hands. *See Aurora*, 2017 WL 6997246, at *6.

Second, the unclean hands defense has no bearing on the case. Both breach of guaranty counts in this case, which the parties agreed to in 2011 and 2013 respectively, precede the unclean hands allegations, which are based on 2017 conduct by People's United Bank. *Compare* Compl. at 2–5. (detailing the 2011 and 2013 loan agreements that form the basis for this lawsuit) *with* Amended Answer to Plaintiff's Complaint, ECF No. 25, at 5–6. (detailing a 2017 temporary restraining order and writ of possession in Georgia that support the unclean hands defense). The alleged unclean hands actions therefore cannot be probative of People's United Bank's alleged "immoral and unconscionable" conduct. *See Conn. Nat'l Bank*, 612 N.Y.S.2d at 496.

Third, permitting the unclean hands defense would prejudice People's United Bank. The purpose of the unclean hands defense is to deter party's from recovering in equity for conduct that "is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people." *Bauer*, 239 Conn. at 525. In this case, allowing an irrelevant allegation related to lawful conduct as a defense can only serve to later implicate liability to the jury and this implication would be unduly prejudicial to the Bank's ability to make its case.

In sum, there is no basis for Mr. Culver's fourth affirmative defense. The Court will strike this factual allegation, along with the related fourth affirmative defense in the Amended Answer. *See GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("There is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims.").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** People's United's motion to dismiss and **GRANTS** People's United's motion to strike.

The Court dismisses Mr. Culver's counterclaim for tortious interference with contract and

dismisses the affirmative defense of unclean hands from the Amended Answer.

Because Mr. Culver is proceeding *pro se*, the Court will not require him to file the Amended Answer again, but this case will proceed without this defense or any allegations relating to it being viable.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of August 2019.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE